```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ANTHONY ATKINSON,

                    Plaintiff,
                                              MEMORANDUM AND ORDER
          -against-                           20-CV-4497(JS)(ST)

GRACE OKOCHA; MICHAEL CONNOLLY;
CHRISTOPHER LALINE; C.O. LAROCK;
JASON D. EFFMAN; BRIAN BELFI, PH.D.;
DONNA HALL; JIMMIE C. MCCURDY; JOHN A.
THOMASSEN, PH.D.; TESLA CARRASQUILLO
ESQ.; ANN MARIE T. SULLIVAN; DEBBIE
WANCE; ANTHONY J. ANNUCCI; ANNE MARIE
MCGRATH; JONATHAN MILJUS, PH.D.;

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:     Anthony Atkinson, pro se
                   96-A-4870
                   Central New York Psychiatric Center
                   Building 41, Unit 218
                   C# 63231
                   9005 Old River Road
                   Marcy, New York 13403-0300

For Defendants:    No appearances.
```

SEYBERT, District Judge:

Before the Court is the Second Amended Complaint timely filed by pro se plaintiff Anthony Atkinson ("Plaintiff") pursuant to the Court's January 5, 2021 Memorandum and Order. (See Jan. 5, 2021 Order, ECF No. 24; Second Amended Complaint ("SAC"), ECF No. 25.)  For the reasons that follow, the Second Amended Complaint is sua sponte DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

1

BACKGROUND[1]

I. Procedural History

Plaintiff is no stranger to this Court.[2] The Court assumes familiarity with the facts and procedural history and only addresses those facts relevant to the Court's screening of the Second Amended Complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A. By way of brief background, Plaintiff was convicted of first-degree rape on June 21, 1996 in the New York State Supreme Court, Suffolk County, and was sentenced to twenty-three years in prison with a maximum release date of September 28, 2018. (See Jan. 5, 2021 Order at 2.) Prior to his release date, the state moved to further detain Plaintiff under Article 10 of the Mental Hygiene Law, also known as the Sex Offender Management and Treatment Act ("SOMTA"). (Id. at 5-6.) On September 14, 2018, the state court judge ordered that Plaintiff be detained past his maximum release date pending a probable cause hearing under Article 10. (Id. at

---

[1] All material allegations in the Second Amended Complaint are presumed to be true for the purpose of this Order. Rogers v. City of Troy, 148 F.3d 52, 58 (2d Cir. 1998).

[2] See Atkinson v. Broesler, No. 93-CV-1346, ECF No. 14 (E.D.N.Y.) (voluntarily dismissing complaint with prejudice); Atkinson v. Geraci, No. 98-CV-1609, ECF No. 82 (E.D.N.Y.) (granting summary judgment to defendants and dismissing Section 1983 complaint); Atkinson v. Portuondo, 269 F. Supp. 2d 57 (E.D.N.Y. 2003) (denying habeas corpus petition on the merits), reconsideration denied, No. 00-CV-3573, 2009 WL 2983006, at *1 (E.D.N.Y. Sept. 10, 2009) (detailing Plaintiff's efforts to reopen the habeas corpus proceedings and entering a litigation injunction).

6.)  On January 4, 2019, Suffolk County Supreme Court Justice Richard Ambro ordered Plaintiff's civil confinement and Plaintiff was transferred to the Manhattan Psychiatric Center on January 31, 2019.  (Id.)  Following a bench commitment trial on October 10, 2019, Justice Ambro found in favor of the state psychiatrists and held that Plaintiff has a mental abnormality as defined by New York Mental Hygiene Law section 10.03(e).  (Id.)  On or about March 8, 2020, Justice Ambro held a hearing, during which Plaintiff was represented by appointed counsel.  (Id.)  Justice Ambro considered Plaintiff's eligibility for Strict and Intensive Supervision and Treatment ("SIST") and again ordered Plaintiff's civil confinement.  (Id.)

Plaintiff initially brought claims seeking his release from custody and challenging the conditions of confinement and deprivation of property.  (See generally Am. Compl., ECF No. 9.)  On August 14, 2020, this Court dismissed these claims for failure to state a claim without leave to amend.  (Order to Show Cause, ECF No. 10, at 6, 11-12.)  Thus, the only remaining claims were those arising out of the alleged failure to provide Plaintiff with a timely probable cause hearing under Article 10.  (Id.)

However, as discussed in this Court's January 5, 2021 Order, Plaintiff failed to properly allege claims based on the alleged failure to timely provide a probable cause hearing. Specifically, the Amended Complaint failed to allege "facts

3

showing how any defendant personally caused the delay in the probable cause hearing." (Jan. 5, 2021 Order at 10.) The undersigned apprised Plaintiff that his "failure to allege any Defendants' personal involvement [in the alleged delay of the probable cause hearing] is fatal to [his] claims," and that Plaintiff's description of "the general roles the Defendants played in the civil commitment process" will not suffice. (Id.) Further, the Court explained that "Plaintiff cannot establish liability solely based on the supervisory positions these Defendants hold," noting that "many of the named Defendants are either immune from suit or are otherwise not proper Defendants under § 1983." (Id. at 11.) Finally, the Court observed that "although Plaintiff seeks a fifteen million dollars in damages award from each Defendant, Plaintiff has not alleged how the brief delay in holding the probable cause hearing harmed Plaintiff, particularly given the fact that his continued detention was ordered." (Id. at 11-12.) The Court continued, "Wholly absent from the Amended Complaint are any allegations concerning how Plaintiff's continued civil commitment as ordered on January 4, 2019 -- rather than within seventy-two hours from his maximum release date of September 28, 2018 -- harmed Plaintiff." (Id. at 12.)

Nevertheless, the Court granted Plaintiff leave to file a Second Amended Complaint limited only to curing the defects in

4

such claims. (See id. at 12-13.) The Court directed Plaintiff to "include facts concerning each named Defendant and shall allege how each Defendant violated Plaintiff's constitutional rights." (Id. at 13.)

II. The Second Amended Complaint

Although the Second Amended Complaint is twenty-one pages exclusive of exhibits, only the first three pages are new. (Compare SAC, with Am. Compl.) Plaintiff has appended the Amended Complaint he had filed on June 15, 2020 to his Second Amended Complaint with minor annotations. (SAC at 4-21.) Like his Amended Complaint, Plaintiff broadly alleges that his ongoing civil confinement is unconstitutional, that he is being denied adequate mental health treatment, and that his personal property has been lost.[3] (See generally SAC.) However, because

---

[3] Although the Second Amended Complaint does not identify the Defendants in the caption, it appears from the substance that Plaintiff continues to hold the following individuals liable: Grace Okocha, Acting Treatment Team Leader at Manhattan Psychiatric Center ("MPC"); Michael Connolly, Civil Commitment Bureau Chief of the Office of the Attorney General; Christopher Laline, Assistant Attorney General; Corrections Officer LaRock, Draft Officer at Gouverneur Correctional Facility; Brian Belfi, Ph.D., Executive Director of MPC at Wards' Island Complex; Donna Hall, Associate Commissioner, Forensic Services at the Office of Mental Health; Jimmie C. McCurdy, Assistant Attorney General; John A. Thomassen, Ph.D., psychologist; Tesla Carrasquillo, attorney at Creedmoor Psychiatric Center; Ann Marie T. Sullivan, Office of Mental Health Commissioner; Debbie Wance, Supervisor, MPC; Anthony J. Annucci, Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"); DOCCS Associate Commissioners Jason D. Effman and Anne Marie McGrath; and Jonathan Miljus, Ph.D., Psychiatric Examiner at the Office of Mental Health,

5

Plaintiff's claims seeking his release from custody and his conditions of confinement and deprivation of property claims were previously dismissed for failure to state a claim and without leave to amend (see Order to Show Cause), the only remaining claims are those arising out of the alleged failure to provide Plaintiff with a timely probable cause hearing under Article 10.[4]

The allegations Plaintiff added in his Second Amended Complaint provide few new facts and are largely comprised of conclusory allegations. For example, the Second Amended Complaint begins: "State of New York Attorney General and O.M.H. Commissioner Ann Marie T. Sullivan kn[e]w or should have known the legal procedures of M.H.L 10.06(h), and (g)-(k)." (SAC ¶ 2.) Further, "State of New York Attorney General and O.M.H. along with DOCCS Commissioner Anthony Annucci, and DOCCS Associate Commissioner Anne Marie McGrath, acted . . . with deliberate indifference and callous disregard for Plaintiff's Constitutional Right of his liberty protected by the Due Process clause who has a liberty interest in being released on his Maximum Expiration date of September 28, 2018." (Id. ¶ 4.) The Second Amended Complaint continues: "The State of New York Attorney Generals neglect to

---

Division of Forensic Services.

[4] Moreover, insofar as Plaintiff challenges the conditions of his confinement at the Manhattan Psychiatric Center and/or the Central New York Psychiatric Center, this Court is not the proper venue.

hold a timely probable cause hearing pursuant to M.H.L. 10.06(h),(g)-(k) resulted in false arrest and imprisonment, and abuse of process and intentional infliction of emotional distress, where the statute defines or creates a duty, which was breached by the official. Where, officials know or should know the rules of law." (Id. ¶ 15.)

Plaintiff's only alleged injury is "extreme emotional distress." (Id. ¶ 8.) As a result of the foregoing, Plaintiff seeks to recover, inter alia, a damages award against each Defendant in the sum of fifteen million dollars. (Id. ¶ 87.)

## DISCUSSION

### I. Legal Standards

Courts are obliged to liberally construe the pleadings of a pro se plaintiff. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson

7

v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Moreover, under 28 U.S.C. § 1915, the Court must dismiss an in forma pauperis action that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii), 1915A(b); Liner v. Goord, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (noting that under sections 1915 and 1915A, sua sponte dismissals of frivolous prisoner complaints are not only permitted but mandatory).

## II. Plaintiff's Section 1983 Claim

Liberally construed, Plaintiff's Second Amended Complaint seeks damages arising out of an alleged denial of due process due to a delay in the probable cause hearing mandated by New York Mental Hygiene Law section 10.06(h). As a preliminary matter, any claims for money damages against the Defendants, who are largely state employees, in their official capacities are barred by the Eleventh Amendment. See, e.g., Abernathy v. Comm'r of Corr., No. 20-CV-00628, 2021 WL 1240018, at *3 (D. Conn. Apr. 2, 2021) (citing Kentucky v. Graham, 473 U.S. 159, 169 (1985)); Roache v. Attorney General's Office, No. 12-CV-1304, 2013 WL

8

5503151, at *14 (N.D.N.Y. Sept. 30, 2013) (holding that government attorneys such as assistant attorneys general are immune from suit).

As the Court recognized in its January 5, 2021 Order, "[c]ivil commitment for any purpose requires due process protection." (See Jan. 5, 2021 Order at 8-9 (quoting Best v. Schneider, No. 12-CV-6142, 2015 WL 5567062, at *11 (E.D.N.Y. Sept. 21, 2015) (further citations omitted)).) Indeed, "[i]ndividuals who have been civilly committed retain substantive due process rights." Aiello v. Lamitie, No. 16-CV-0053, 2020 WL 918989, at *5 (N.D.N.Y. Feb. 26, 2020) (citing Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982)). "In deciding a due process claim under § 1983, however, federal courts must independently assess whether the state's application of these procedures to the plaintiff's case violated a constitutional right." Id. (citing Charles W. v. Maul, 214 F.3d 350, 357 (2d Cir. 2000)).

The Second Amended Complaint adds no new facts in support of Plaintiff's due process claims. (See generally SAC.) Plaintiff conflates the requirements of state law with the requirements of the due process clause. Article 10 of the Mental Hygiene Law ("MHL") creates a statutory scheme prescribing the procedures to be followed with respect to convicted sex offenders who the state seeks to commit or supervise following completion of their prison terms. See Mental Hygiene Legal Servs. v. Spitzer,

9

No. 07-CV-2935, 2007 WL 4115936, at *4 (S.D.N.Y. Nov. 16, 2007), aff'd sub nom. Mental Hygiene Legal Servs. v. Paterson, No. 07-CV-5548, 2009 WL 579445 (2d Cir. Mar. 4, 2009).  Pursuant to the MHL, a detained individual is entitled to a probable cause hearing "no later than seventy-two hours from the date of [his] anticipated release date."  See NY Mental Hyg. Law § 10.06(h); Roache, 2013 WL 5503151, at *5 (detailing statutory scheme for protecting due process rights of civil detainees, including right to timely probable cause hearing). "Though the probable cause hearing is initially scheduled to be held within 72 hours of the filing of a securing petition, the probable cause hearing may be delayed due to (i) delay caused or consented to by the individual, or (ii) a showing by the Attorney General, to the satisfaction of the court, of 'good cause why the hearing could not . . . commence.'" Spitzer, 2007 WL 4115936, at *8 (quoting NY Mental Hyg. Law § 10.06(h)).  Further, MHL provides that in the event of the filing of a securing petition, "there shall be no probable cause hearing until such time as the case review team may find that the respondent is a sex offender requiring civil management."  NY Mental Hyg. Law § 10.06(f).  Thus, although Article 10 mandates that a probable cause hearing be held within seventy-two hours, the fact that Plaintiff's probable cause hearing under Article 10 was held on January 4, 2019, i.e., more than seventy-two hours after the September 14, 2018 order of detention, does not necessarily

implicate the due process clause.

To begin a due process analysis, on the other hand, the Court first determines whether Plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determines whether the Defendants deprived plaintiff of that liberty interest without due process. Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001). Undoubtedly, Plaintiff has a liberty interest in remaining free from involuntary commitment to a mental hospital. See Vitek v. Jones, 445 U.S. 480, 493 (1980). The issue here is whether Plaintiff was afforded the appropriate procedural safeguards in connection with his civil commitment given the approximate three-month delay in his probable cause hearing.

The Court finds it unnecessary to reach this issue, however, because Plaintiff has not alleged the personal involvement of any Defendant. The Court made clear that a Section 1983 claim against an individual defendant must allege the personal involvement of the defendant in the alleged constitutional deprivation.[5] (See Jan. 5, 2021 Order at 9 (citing Farid v. Elle,

---

[5] A plaintiff properly asserts personal involvement by alleging: "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring."

11

593 F.3d 233, 249 (2d Cir. 2010)). "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" Austin v. Pappas, No. 04-CV-7263, 2008 WL 857528, *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)).

Moreover, as the Second Circuit recently made clear, "there is no special rule for supervisory liability" and, in order "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." Tangreti v. Bachmann, 983 F.3d 609, 619-20 (2d Cir. 2020). Where a Section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law. See Johnson v. Barney, 360 F. App'x 199, 201 (2d Cir. 2010).

Here, as is readily apparent, Plaintiff has not alleged any facts regarding conduct or inaction by any of the Defendants

---

Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003), cited in Jan. 5, 2021 Order at 9, n.6.

12

with regard to the civil commitment process and specifically the scheduling and/or delay of the probable cause hearing. Rather, Plaintiff includes wholly conclusory and speculative allegations against several of the Defendants. (See generally SAC.) For example, Plaintiff alleges that Defendant Sullivan "kn[e]w or should have known the legal procedures" and that several of the Defendants "acted with deliberate indifference and callous disregard for Plaintiff's Constitutional Right of his liberty protected by the Due Process Clause. . . ." (SAC ¶¶ 2, 4.) The failure to allege any facts demonstrating any Defendants' personal involvement is fatal to Plaintiff's claims. See Spavone v. N.Y. State Dep't of Corr. Serv., 719 F.3d 127, 135 (2d Cir. 2013) (holding that a plaintiff proceeding under Section 1983 must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation); see also Roache, 2015 WL 1442963, at *10 (dismissing MHL Article 10 claim for failure to name personally involved defendants who were not immune from suit); Roache, No. 12-CV-1034, Adoption Order, ECF No. 63 (adopting Report and Recommendation recommending dismissal of due process claim arising from a delayed probable cause hearing under the MHL because Plaintiff's conclusory allegations that each defendant knew or should have known that he was being improperly held in violation of MHL Article 10 were insufficient). On this basis, the Second Amended Complaint is DISMISSED pursuant to 28 U.S.C. §§

13

1915(e)(2)(B), 1915A(b).

Finally, although Plaintiff seeks a fifteen million dollars in damages award from each Defendant, Plaintiff has not alleged how the brief delay in holding the probable cause hearing harmed Plaintiff, particularly given the fact that his continued detention was ordered. Bass, 790 F.2d at 263 (holding a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered" to prevail on a Section 1983 cause of action against an individual). Like the Amended Complaint, the Second Amended Complaint omits any factual allegations concerning how Plaintiff's continued civil commitment as ordered on January 4, 2019 -- rather than within seventy-two hours from his maximum release date of September 28, 2018 -- harmed Plaintiff given that his continued detention was ultimately ordered.

Accordingly, Plaintiff fails to allege a plausible claim for relief and the SAC is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

III. Leave to Amend

The Court should ordinarily grant a pro se plaintiff the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted). However, "an opportunity to amend is not required where the plaintiff has

14

already been afforded the opportunity to amend." Roache, 2019 WL 6827296, at *5 (citing Shuler v. Brown, No. 07-CV-0937, 2009 WL 790973, at *5 & n.25 (N.D.N.Y. March 23, 2009) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.")); see also Yang v. N.Y.C. Trans. Auth., No. 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); Advanced Marine Tech. v. Burnham Sec., Inc., 16 F. Supp.2d 375, 384 (S.D.N.Y. 1998) (same).

Here, Plaintiff was afforded that opportunity and the Court clearly set forth, at a minimum, what is required to plausibly allege his due process claims against the Defendants. Rather than attempt to cure his allegations, Plaintiff simply appended his deficient Amended Complaint to his Second Amended Complaint and resubmitted it. Accordingly, it appears that leave to further amend would be futile.

Moreover, given that Plaintiff has not suffered any physical injuries as a result of the alleged delay in his probable cause hearing, leave to amend this claim would be futile. See 28 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . ."); see Oneil v. Rodriguez, No. 18-CV-3287, 2020 WL 5820548, at *5 (E.D.N.Y. Sept.

30, 2020) (dismissing Section 1983 claim where allegations were insufficient to meet the "physical injury" requirement of Section 1997e(e)); Dash v. Doe, No. 19-CV-0414, 2020 WL 3057133, at *4 (S.D.N.Y. June 9, 2020) ("[I]n the absence of a showing of physical injury, a prisoner cannot recover compensatory damages for mental or emotional injury." (internal quotation marks and citation omitted)). Accordingly, LEAVE TO FURTHER AMEND THE COMPLAINT IS DENIED.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

CONCLUSION

For the reasons set forth above, Plaintiff's Second Amended Complaint is sua sponte DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Clerk of the Court shall ENTER JUDGMENT and mark this case CLOSED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is directed to mail a copy of this Order to the pro se Plaintiff.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: April 19, 2021
       Central Islip, New York